**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| WESTFIELD VILLAGE COMMUNITY } | |
| IMPROVEMENT ASSOCIATION, } | |
|       *Plaintiff(s)* } | |
| } | |
| v. } | CIVIL ACTION NO. H-03-0368 |
| } | |
| THE SECRETARY OF HOUSING AND } | |
| URBAN DEVELOPMENT, *et al.*, } | |
|       *Defendant(s)* } | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This case involves a dispute over the ownership of and unpaid homeowners' association assessments on the residential property located at 5207 Summit Lodge, Katy, Texas (the "Property"). The Court held a bench trial in this matter on 07 February 2005. For the reasons set forth below, the Court will enter judgment holding that (1) the lien on the Property held by Defendant Secretary of Housing and Urban Development ("HUD") is valid and enforceable; (2) HUD is entitled to judicial foreclosure of its lien; (3) Defendants Joseph and Denise La Motte (the "LaMottes") must surrender the Property to HUD pending foreclosure; and (4) HUD must pay Plaintiff Westfield Village Community Improvement Association ("Westfield") the sum of $8457.54 to satisfy the unpaid assessments, interest, costs and attorneys' fees due under the restrictive covenant to which the property is subject.

**I.     FINDINGS OF FACT**[1]

**A.     HUD's Lien on the Property**

1.    In 1985, the LaMottes obtained a home loan guaranteed by HUD and executed a promissory note (the "Note") in the original principal sum of $78,420.00 payable to the order of Mercantile Mortgage Corporation. The payment of the Note was secured by a vendor's lien and a deed of trust lien on the Property. The LaMottes defaulted on the Note. Mercantile Mortgage Corporation assigned the Note to Leader Federal Savings & Loan Association in 1987, and Leader

---

[1] The parties in this action failed to file any dispositive motions and instead sought a bench trial on their claims. Nevertheless, the relevant facts in this action were largely undisputed. Unless otherwise indicated, the facts recounted herein are not in dispute.

later assigned the Note to HUD. Assignments of the lien were duly recorded in the Official Public Records of Real Property of Harris County, Texas, on February 12, 1988, and January 6, 1989, respectively. The LaMottes continued to occupy the Property.

2. The LaMottes fell behind on their payments on the Note and HUD had to advance funds to pay property taxes. In 1994, HUD retained the law firm of Eikenburg & Stiles to initiate foreclosure proceedings and attorney David J. Elliott was appointed as a substitute trustee under the deed of trust. The LaMottes received a 21-day notice informing them that a foreclosure sale was scheduled for April 4, 1995.

3. On April 3, 1995, in order to stop the sale, the LaMottes filed a petition initiating Case No. 95-42360, in the U.S. Bankruptcy Court for the Southern District of Texas, Houston, Division, under Chapter 7 of the Bankruptcy Code.

4. On April 4, 1995, acting without notice of the bankruptcy, the substitute trustee conducted a foreclosure sale and the Property was struck off to HUD for a credit bid of $126,331.10. A substitute trustee's deed was signed and notarized that day, and recorded in the Official Public Records of Real Property of Harris County, Texas, on Monday, April 10, 1995, under Clerk's File No. R-219149.

5. The LaMottes filed schedules and a Chapter 7 Debtor's Statement of Intention in their bankruptcy case on April 26, 1995. Their schedules placed a market value of $71,000.00 on the Property and listed an undisputed, liquidated, non-contingent lien debt to HUD in the amount of $130,373.96. The Statement of Intention stated that the LaMottes would surrender the property and acknowledged that § 521(2)(B) of the Bankruptcy Code required that they carry out this surrender "within 45 days of the filing of this statement with the court."[2] The LaMottes have never surrendered the property and have continued to occupy it without paying any rent or making any payments towards the purchase money debt.

---

[2] Doc. 26 Ex. A.

6. The bankruptcy court signed and entered a Discharge Order in the LaMottes' Chapter 7 case on October 2, 1995.

7. The records of the Harris County Tax Appraisal District and Harris County Tax-Assessor Collector show that HUD is the owner of the Property. Since April 1995, HUD has paid in excess of $12,477.00 to local taxing authorities to protect its interest in the Property.

8. In 1997, HUD again initiated non-judicial foreclosure proceedings against the Property. The LaMottes filed an Application for Temporary Injunction and the parties agreed to pass the sale. No further action was taken by HUD at that time.

9. The Note bears interest at the rate of 11.5 percent per annum. As of November 1, 1994, the remaining principal balance was $77,870.32 and the accrued interest was $42,505.58. The LaMottes have not made any payments since that date and HUD has since paid in excess of $12,477.00 to local taxing authorities to protect its interest in the Property. The amount due as of November 1, 2004 was:

| | |
|---|---|
| Principal | $77,870.32 |
| Interest to 11-01-94 | $42,505.58 |
| Interest from 11-01-94 to 11-01-04 | $89,550.10 |
| Taxes paid | $12,477.00 |
| Total Due | $222,403.00 |

**B. Botched Sale to Salomon Brothers Realty Corp.**

1. HUD sold a large number of insured loans to Salomon Brothers Realty Corp. ("Salomon") pursuant to a Loan Sale Agreement dated September 22, 2000. The LaMottes's loan was included in the list of loans to be sold.

2. Although the LaMottes's loan was included in the list of loans to be sold, their loan should have been excluded pursuant to the terms of the Loan Sale Agreement. In particular, § 3.03(B) of the Loan Sale Agreement provided that loans were supposed to be excluded from the sale if:

> (i) title to the Mortgaged Property relating to any Mortgage Loan is transferred to HUD by foreclosure sale or other judicial or non-judicial remedy; (ii) title to the Mortgaged Property relating to any Mortgage Loan is transferred to HUD by deed in lieu of foreclosure or other judicial or non-judicial sale; or (iii) HUD accepts a

payment of less than the entire Unpaid Principal Balance of a Mortgage Loan in full satisfaction of the Mortgagor's obligation under the Mortgage Loan.[3]

Furthermore, in § 8.02, HUD represented and warranted that with respect to each "Mortgage Loan" to be included in the sale:

> B.     As of the Closing Date, the related Mortgage is a valid and enforceable first lien on the Mortgaged Property covered thereby, except for: (i) liens for real estate taxes, and municipal sewer or water charges and special assessments, if any; (ii) mechanic's liens, materialman's liens and liens related to fees owed to condominium and homeowner associations; (iii) covenants, conditions and restrictions, rights of way, easements and other matters of public record; and (iv) other matters to which like properties are commonly subject which do not, individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by such Mortgage.
>
> C.     As of the Closing Date, the Mortgage and Mortgage Note (i) constitute the valid and binding obligations of either the parties who executed the same or, if the obligations under the Mortgage and Mortgage Note have been assumed, of the parties who assumed the same, and (ii) are enforceable in accordance with their terms, subject, however, to any applicable bankruptcy, moratorium, insolvency, reorganization and other laws affecting creditors' rights generally, to general principles of equity, and to any applicable forbearance relief.[4]

3.     Nevertheless, in December 2000 the LaMottes were notified that HUD had assigned the note to Salomon Brothers and that the new loan servicer was Litton Loan Servicing LP ("Litton"). Furthermore, in March 2001 Salomon and Litton's attorneys gave the LaMottes a Notice of Substitute Trustee's Sale to be held on April 3, 2001.

4.     On April 2, 2001, the 127th Judicial District Court of Harris County, Texas granted a Temporary Restraining Order in Cause No. 2001-17637 ( the "state court suit"), enjoining the April 3, 2001 foreclosure sale. On May 1, 2001, Salomon and Litton filed a counter-claim in the state court suit for judicial foreclosure of the liens securing the payment of the Note. Later that month, on May 25th, an Assignment of Note and Deed of Trust (the "Assignment") assigning the Note to Salomon was executed, filed and recorded in the Official Public Records of Real Property of Harris

---

[3]Loan Sale Agreement (LaMotte's Exhibit 25) § 3.03(B).

[4]*Id*. § 8.02.

County, Texas. The Assignment was signed by Edward C. Hill, Vice-President of Litton Loan Servicing, L.P., as "Agent and Attorney-in-Fact" for HUD.[5]

5.      On May 23, 2003, a Declaratory Judgment was entered in the state court suit finding "that under state and federal law, the statute of limitations had run on the Note and the liens securing its payment prior to the transfer of the Note and liens to Salomon Brothers Realty. During the period of time that the Note and liens were held by Salomon Brothers Realty, the liens securing the payment of the Note were void and unenforceable."[6]

6.      In June 2003 the state court suit was settled and the court entered an agreed order of dismissal, dismissing all claims with prejudice.[7]

7.      Despite the foregoing, the uncontroverted evidence establishes that HUD is the current holder and owner of the note.[8] The LaMottes presented no evidence to establish that the Note was ever delivered or endorsed to Salomon Brothers.

**C.      Westfield's Claims and Procedural History**

1.      The Property is subject to an instrument entitled Declaration of Covenants, Conditions, and Restrictions of Westfield Village, Section One ("Declaration") establishing restrictive covenants or deed restrictions applicable to all lots in the subdivision recorded and filed in the Real Property Records of the County Clerk of Harris County, Texas, under clerk's file number H610716, on September 10, 1982.

2.      The Declaration requires payment of maintenance assessments to Westfield under Article VIII, Section 1, page fifteen.

3.      The maintenance assessments on the Property have not been paid in 1999, 2000, 2001, 2002, 2003, and 2004.

---

[5] LaMotte Ex. 27.

[6] Declaratory Judgment dated May 23, 2003 in Cause No. 2001-17637 (127th Judicial District Court of Harris County, Texas) (LaMotte Ex. 34).

[7] LaMotte Ex. 35.

[8] HUD presented both the Note and the deed of trust at trial. *See* HUD's Exs. 1 & 2.

5

4.    Article VIII, Section 1 of the Declaration allows for "annual maintenance charge assessments, together with interest, costs, and reasonable attorney's fees" to be a charge on the Lot, and also "the personal obligation of the person who was the Owner of such Lot at the time when the assessment became due."

5.    Article VIII, Section 7 of the Declaration allows an imposition of eighteen (18) percent per annum interest for unpaid maintenance assessments. The amount of maintenance assessments due by the Owner is $1,914.00, which is broken down as follows:

| Year | Amount |
|---|---|
| 1999 | $303.00 |
| 2000 | $303.00 |
| 2001 | $318.00 |
| 2002 | $330.00 |
| 2003 | $330.00 |
| 2004 | $330.00 |
|  | $1,914.00 |

6.    The amount of late fees due by the owner is $2,357.50.

7.    The amount of collection fees due by the owner is $230.00.

8.    In order to collect these fees Westfield filed this action in February 2003. The parties agree that the party adjudged to be the owner of the Property should be required to pay the delinquent assessments, late fees, collection costs, and attorneys' fees to Westfield. Furthermore, at the bench trial held before this Court the parties stipulated that the total amount due to Westfield is now $8457.54.[9]

9.    In March 2004 HUD filed a motion in the bankruptcy court seeking to reopen the case in order to force the LaMottes to perform their obligations under 11 U.S.C. § 521(2)(B) and to validate the substitute trustee's deed by having the bankruptcy court retroactively annul the automatic stay. The bankruptcy court initially denied that motion without prejudice but, upon re-urging, it granted the motion and reopened the case on June 24, 2004.

10.    On July 16, 2004, HUD filed a motion for relief from the stay, asking the bankruptcy court to validate the substitute trustee's deed. On August 19, 2004, the bankruptcy court held a hearing

---

[9] Plaintiff's Ex. 10.

on the issue and denied the motion without prejudice. At that hearing the bankruptcy court also explicitly took judicial notice of the pendency of this action.

## II. CONCLUSIONS OF LAW

### A. Jurisdiction

The Court finds that it has jurisdiction to hear Plaintiff's claim against HUD under 28 U.S.C. § 1442(a)(1) and supplemental jurisdiction over Plaintiff's claim against the LaMottes. The Court has jurisdiction over HUD's cross-claim against the LaMottes under 28 U.S.C. §§ 1334 & 1345.

### B. HUD is the Holder of the Note and Is Entitled to an *In Rem* Judgment Foreclosing Its Lien

1. The uncontroverted evidence establishes that HUD is the holder of the Note. HUD presented both the Note and the deed of trust at trial.[10] HUD's possession of the Note along with the Note's containing the proper endorsements to HUD is *prima facie* evidence of HUD's ownership of the Note.[11] The burden was on the LaMottes to rebut HUD's evidence.[12]

2. The record in this action plainly establishes that the LaMottes have had good reason to believe that the Note was transferred to Salomon. There is no dispute that the LaMotte's loan was included in the list of loans to be sold to Salomon under the Loan Sale Agreement; that the LaMottes were informed by Litton in December 2000 that Salomon was the new owner of the loan; or that Salomon litigated an entire lawsuit against the LaMottes in an effort to collect on what by all appearances was "its" loan. Nevertheless, the Court finds that the LaMottes have failed to

---

[10]HUD's Exs. 1 & 2.

[11]*See, e.g.*, *Sonne v. F.D.I.C.*, 881 S.W.2d 789, 794 (Tex.App.-Hous. (14 Dist.), 1994) ("The FDIC attached an affidavit with the promissory note in which Joe T. Vickery, authorized agent of the FDIC, asserted that the note was a true and correct copy of the note in question and that the note was properly endorsed to the FDIC and was in their possession. Such evidence establishes prima facie evidence of ownership of the note. **The burden then shifted to appellants to present controverting summary judgment proof on the issue of ownership.**") **(citing *Zarges v. Bevan*, 652 S.W.2d 368, 369 (Tex.1983) *and City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 679 (Tex.1979));** *see also Lloyd v. Lawrence*, **472 F.2d 313, 317 (5th Cir. 1973) ("That the issue of actual possession is a simple one to prove should not mislead us into underestimating the significance of the issue. In a suit on a negotiable instrument, possession is in a very real sense 'nine-tenths of the law.' Possession establishes a prima facie case of ownership. And proof of possession by production of the instrument entitles the holder to recover on it unless the opposing party establishes a defense.") (internal citations omitted).**

[12]*Id.*

establish that Salomon ever became the holder and owner of the Note. Significantly, the Note does not contain any endorsements to Salomon.[13] Nor did the LaMottes present any evidence to establish that the Note was ever delivered to Salomon.[14] Finally, as discussed above, HUD presented evidence demonstrating that the LaMottes's loan was included in the sale list to Salomon by mistake. Given the evidence in the record before it, the Court finds that HUD is the owner of the Note and that the Note was never validly transferred to Salomon.[15]

3. The LaMottes also contend that "the April 4, 1995 foreclosure sale was void . . . and that HUD's lien is barred by limitations, res judicata, and/or collateral estoppel."[16] HUD has not directly addressed the issue of the validity of the 1995 foreclosure sale in this Court. Instead, HUD asserts that its "lien rights continue to exist [even] if the April 4, 1995 foreclosure sale was not valid."[17] The Court agrees: the "mere setting aside of a foreclosure sale does not relieve the mortgagors of their obligation to perform under the promissory note and Deed of Trust."[18] There is no dispute that the LaMottes have failed to perform under the Note. Furthermore, the LaMottes's Chapter 7 bankruptcy discharged their *personal* liability, but it left HUD's right to enforce its lien via an *in rem* judgment intact.[19] Accordingly, the Court finds that HUD is entitled to an *in rem* judgment foreclosing its lien for $222,403.00.

---

[13] *See* Tex. Bus. & Com. Code § 3.201 ("if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder").

[14] The LaMottes's counsel stated on the record that, "We don't know where that Note's been. There's no evidence on that issue."

[15] The Court notes that the LaMottes could have, but apparently did not, raise the issue of ownership of the Note in the state court suit as a defense to Salomon's claims. *See, e.g.*, *First State Bank of Chico v. Smith*, 488 S.W.2d 837 (Tex. Civ. App.–Fort Worth 1972, no writ) (affirming directed verdict for defendant in action where plaintiff bank failed to present note or evidence that it was owner of note).

[16] *Joint Pretrial Order* (Doc. 32) at 4.

[17] *HUD's Proposed Findings of Fact and Conclusions of Law* ¶ 2.

[18] *In re Keith*, 211 B.R. 355, 359 (Bankr. W.D. Mo. 1997); *see also Shearer v. Allied National Bank*, 758 S.W.2d 941, 943 (Tex. App. - Corpus Christi 1988, writ denied) ("Because the foreclosure sale of the real property was set aside, both parties assumed their original positions as debtor and creditor.").

[19] *See Johnson v. Home State Bank,* 501 U.S. 78, 84 (1991) ("Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim–namely, an action against the debtor *in personam*–while leaving intact another–namely, an action against the debtor *in rem*").

8

4.	Finally, the Court rejects the LaMottes's contention that HUD's lien is barred by limitations, res judicata, and/or collateral estoppel. HUD's right to foreclose its lien is not barred by the six year statute of limitations in 28 U.S.C. § 2415(a) because this is not an action for money damages and no limitations period applies to foreclosure by the federal government.[20] Furthermore, HUD was not a party to any prior proceeding in which its rights could have been determined, nor did counsel for the LaMottes make any effort to explain how any relevant theory of claim preclusion applied to HUD. Accordingly, the Court finds that HUD's claim is not barred by claim preclusion.

### III.	CONCLUSION & ORDER

As counsel for the LaMottes aptly stated at trial, the equities on both sides of this case are lousy. Nevertheless, for the reasons set forth above, the Court finds that HUD is entitled to an *in rem* judgment foreclosing its lien for $222,403.00. Although HUD admittedly "has been dilatory in asserting its rights of possession,"[21] its inaction has benefitted and not harmed the LaMottes, who in any case unambiguously agreed to surrender the Property nearly a decade ago.[22] In accordance with the parties' stipulation, the Court will now enter a final judgment in favor of Westfield and against HUD for $8457.54. Furthermore, the Court **ORDERS** that HUD must submit a proposed final judgment foreclosing its lien for $222,403.00 that comports with the terms of this memorandum opinion within **10 DAYS** of the entry of this Order. This will allow counsel for HUD

---

[20]*F.H.A. v. Muirhead*, 42 F.3d 964 (5th Cir. 1995); *see also UMLIC VP LLC v. Matthias*, 364 F.3d 125, 134-35 (3rd Cir. 2004).

[21]*HUD's Proposed Findings of Fact and Conclusions of Law* ¶ 6. The Court notes that the present case is an excellent example of the problem discussed by Judge Edith Jones in *Muirhead*:

> [W]e are troubled by the federal government's insistence that it may enforce ancient mortgages outstanding in numerous, long-lived and often default-prone federal lending programs essentially forever. The continued existence of these mortgages may cloud titles to property all over the country, and in so doing will engender confusion, higher real property transaction costs, and commercial instability. If federal agencies simply conformed their lending practices to the dictates of state law, as every private lender must, they would act more promptly upon defaulted mortgages and would not prejudice the alienability of reality [sic].

*Muirhead*, 42 F.3d at 967.

[22]As noted above, the LaMottes's Statement of Intention stated that they would surrender the Property and acknowledged that § 521(2)(B) required that they carry out this surrender "within 45 days of the filing of this statement with the court." Doc. 26 Ex. A.

9

and the LaMottes to confer regarding the details of the surrender prior to this Court's entry of final judgment in HUD's favor.

**SO ORDERED** at Houston, Texas, this 1st day of August, 2005.

*[signature: Melinda Harmon]*

MELINDA HARMON
UNITED STATES DISTRICT JUDGE